## COMPAGNE NAVIGAZIONE SOTA Y AGNAR v. DIAMOND FUEL CO., Incorporated.

(District Court, D. Maryland.    May 4, 1921.)

No. 709.

Shipping ☞52—Charterer bound regardless of export permit is liable for failure caused by refusal of permit to transport.

Where an interlineation in the charter party expressly bound the charterer to load the ship at the time specified, whether it had government exporter's license or not, the charterer is liable for the damages resulting from the failure to furnish the cargo, though such failure was caused by an order of the Interstate Commerce Commission restricting the transportation of coal by rail to the port.

In Admiralty. Libel by the Compagne Navigazione Sota y Agnar against the Diamond Fuel Company, Incorporated, to recover damages for failure to load the ship under the terms of the charter party. Decree rendered for libelant.

The Unbe Mendi was chartered on a Welsh form containing the provisions: "3. The cargo to be loaded at an average rate of not less than 1,500 tons per running day, Sundays and holidays excepted. Time to commence (regardless of whether or not charterers have government export license), at the expiration of 72 hours after notice of steamer's readiness to load, whether steamer is berthed or not, and from the time steamer is ready to load (or within 72 hours after readiness to load, if delayed waiting turn at berth), and master has given notice in writing. Any time lost through riots, strikes, lockouts, or any dispute between masters and men, occasioning a stoppage of pitmen, trimmers, or other hands connected with the working or delivery of the coal for which the steamer is stemmed, or by reason of accidents to mines or machinery, obstructions on the railway or in the docks, or by reason of floods, frosts, fogs, storms, or any cause beyond the control of the charterers, not to be computed as part of the loading time (unless any cargo be actually loaded during such time). In the event of any stoppage or stoppages arising from any of these causes continuing for the period of six run-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ning days from the time of the vessel being ready to load, this charter shall become null and void: Provided, however, that no cargo shall have been shipped on board the steamer previous to such stoppage or stoppages. In case of partial holiday, or partial stoppage of colliery or collieries from any or either of the aforenamed causes, the lay hours to be extended proportionately to the diminution of output arising from such partial holiday or stoppage. If longer detained, charterers to pay 48 cents per net registered ton per day demurrage. No deduction of time shall be allowed for stoppages, unless due notice be given at the time to the master or owner. If any dispute or difference should arise under this charter, same to be referred to three parties in the city of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or any of them, shall be final and binding, and this agreement may, for enforcing the same be made a rule of court."

"7. The act of God, the king's enemies, restraints of princes and rulers, and perils of the seas excepted; also fire, barratry of the master and crew, pirates, collisions, strandings, and accidents of navigation, or latent defects in, or accidents to, hull and/or machinery, and/or boilers, always excepted, even when occasioned by the negligence, default, or error in judgment of the pilot, master, mariners or other persons employed by the shipowner, or for whose acts he is responsible, not resulting, however, in any case from want of due diligence by the owner of the ship, or by the ship's husband or manager. Charterers not answerable for any negligence, default, or error in judgment of trimmers or stevedores employed in loading or discharging the cargo. The steamer has liberty to call at any ports in any order, to sail without pilots, to tow and assist vessels in distress, and to deviate for the purpose of saving life or property and to bunker. It is also mutually agreed that this shipment is subject to all the terms and provisions of and all the exemptions from liability contained in the act of Congress of the United States, approved on the 13th day of February, 1893, and entitled, 'An act relating to navigation of vessels,'" etc.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Janney, Stuart & Ober, of Baltimore, Md., for libelant.

W. Ainsworth Parker, R. E. Lee Marshall, and Charles R. Webber, all of Baltimore, Md., for respondent.

ROSE, District Judge. In this case the libelant, a Spanish corporation, owner of the steamship Unbe Mendi, is seeking to recover from the respondent, a corporation of Delaware, the loss occasioned by the failure of the respondent to load the ship as required by the terms of a charter party.

The charterer says it is excused by the same Service Order No. 6 of the Interstate Commerce Commission as is fully discussed in the opinion in No. 724, Hellenic Transport S. S. Co. v. Archibald McNeil & Sons Co., Inc., 273 Fed. 290, handed down this day. Even if the conclusion reached in that case be in any wise erroneous, the respondent herein would remain liable, for by an interlineation in the charter party it expressly bound itself to load the ship, whether or not it had government export license. It must make good the loss the charterer has suffered in consequence of its not having done so.